

**FILED**
MAY 22 2014
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT G. PEARSON and ILLINOIS STOCK TRANSFER COMPANY (d/b/a IST SHAREHOLDER SERVICES),<br><br>Defendants. | 14cv3785<br>Judge Rebecca R. Pallmeyer<br>Magistrate Judge Young B. Kim<br><br>JURY DEMANDED |

[FILED UNDER SEAL]

## COMPLAINT

Plaintiff United States Securities and Exchange Commission ("Commission") alleges and states as follows:

### SUMMARY

1. The Commission brings this action to enjoin and restrain Defendants from continuing their fraudulent misappropriation scheme and other violations of the federal securities laws. Defendant Illinois Stock Transfer Company (d/b/a ist Shareholder Services) ("IST") is a registered transfer agent. Defendant Robert G. Pearson ("Pearson") is IST's president and sole owner. For most of the past two years, if not longer, Pearson has been misappropriating money belonging to IST's corporate clients and those clients' shareholders in order to satisfy IST's payroll and other business obligations. Pearson admitted to the scheme during a recent examination of IST conducted by Commission staff. To date, Defendants are believed to have fraudulently misappropriated at least $1.3 million

from an IST bank account holding commingled customer funds. As of the end of April 2014, there was over $31 million in that account, which is completely under Defendants' control and thus at risk.

2. In addition to the misappropriation of customer funds, Commission staff discovered during their examination that Defendants were violating a host of other securities laws applicable to transfer agents.

3. Given Pearson's prolonged misuse of customer funds, as well as his control over IST's bank accounts and the unissued stock certificates and dividend checks in IST's vault, the Commission seeks emergency relief from the Court to enjoin and restrain Defendants' unlawful conduct and to protect the public from further harm.

## DEFENDANTS

4. IST is an Illinois corporation with its principal place of business located in Wheaton, Illinois. IST has been in business since at least 1925. The company has been registered with the Commission as a transfer agent since 1975.

5. Pearson is the president, chief executive officer and sole owner of IST. Pearson acquired control of IST in August 1990 from his father. Pearson resides in Winfield, Illinois.

## JURISDICTION AND VENUE

6. The Commission brings this action pursuant to Sections 21(d) and 21(e) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d), 78u(e)]. The Court has jurisdiction over this action pursuant to Section 27 of the Exchange Act. [15 U.S.C. § 78aa].

7. Venue is proper in this Court pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa]. The office of IST is located within the Northern District of Illinois. Pearson resides in the Northern District of Illinois. The acts, transactions, practices, and courses of business constituting the violations alleged herein occurred within the jurisdiction of the Northern District of Illinois.

8. Pearson and IST, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, and the mails, in connection with the acts, practices, and courses of business complained of herein, and will continue to do so unless enjoined.

## FACTS

### The Commission's Prior Examinations of IST

9. As of the end of September 30, 2013, IST provided transfer agent and registrar services to approximately 130 issuers. According to the most recent Form TA-2 filed by IST with the Commission, as of December 31, 2013, IST provided dividend disbursements and interest paying agent activities for 65 issues (of securities from certain of the 130 issuers), and dividend reinvestment plan services for 18 issues.

10. IST entered into an agreement with each issuer. Pursuant to that agreement, IST agreed to provide and perform certain services. At all times, an agency relationship existed between IST and the issuer-customers who engaged IST to provide the services of a transfer agent. At all times, IST had a duty to provide honest services to its issuers.

11. Transfer agents provide a critical role in the efficient operation of the securities markets. As provided on the Commission's website:

3

> Transfer agents record changes of ownership, maintain the issuer's security holder records, cancel and issue certificates, and distribute dividends. Because transfer agents stand between issuing companies and security holders, efficient transfer agent operations are critical to the successful completion of secondary trades. Section 17A(c) of the 1934 Act requires that transfer agents be registered with the SEC, or if the transfer agent is a bank, with a bank regulatory agency. There is no [self-regulatory organization] that governs transfer agents. The SEC therefore has promulgated rules and regulations for all registered transfer agents, intended to facilitate the prompt and accurate clearance and settlement of securities transactions and that assure the safeguarding of securities and funds. The rules include minimum performance standards regarding the issuance of new certificates and related recordkeeping and reporting rules, and the prompt and accurate creation of security holder records and the safeguarding of securities and funds. The SEC also conducts inspections of transfer agents.

(http://www.sec.gov/divisions/marketreg/mrtransfer.shtml.)

12. The staff of the Broker-Dealer Examination program located in Chicago, Illinois ("CHRO examiners") conducted examinations of IST in September 2008 and January 2011.

13. At the conclusion of the 2008 examination, CHRO examiners found several deficiencies at IST in the following areas (among others): recordkeeping; safeguarding of funds and securities; compliance with the notification requirements; and fingerprinting of securities industry personnel. CHRO examiners notified Defendants of the deficiencies by letter dated August 26, 2009. Defendants responded to the notice of deficiencies in writing on September 23, 2009.

14. CHRO examiners conducted another examination of IST in 2011. At the conclusion of the 2011 examination, CHRO examiners yet again found IST deficient in the same areas as described in Paragraph 13. They also noted some new deficiencies.

15. On July 1, 2011, CHRO examiners sent a letter to Pearson informing him and IST, among other things, that they were concerned IST did not take its compliance obligations seriously: "Despite the firm's assurance that it would strengthen its

4

compliance, it appears the firm has deviated further from its requirements to comply with the rules. On August 3, 2011, Pearson, on behalf of IST, responded in writing, stating "I and my staff are committed to do [sic] everything possible to correct any and all deficiencies noted in your examination."

**The Commission's 2013 Examination of IST**

16. In September 2013, CHRO examiners notified Defendants that they would be conducting another examination of IST. CHRO examiners began the examination on October 22, 2013. During the course of the 2013 examination, CHRO examiners discovered that IST maintained an account at BMO Harris Bank in the name of "Illinois Stock Transfer Company – Miscellaneous Clearing Account" ("BMO Account"). CHRO examiners asked Pearson for more information about the BMO Account.

17. According to Pearson, the funds deposited in the BMO Account are primarily from two sources. The first source is from corporate issuers using IST as a paying agent to make cash disbursements to shareholders for share exchanges. Share exchanges occur, for example, when issuers are acquired or merge into a new company. When a share exchange takes place, one of three things can happen: (1) the issuer offers to exchange the shareholders' shares in the old company for shares in the new company; (2) the issuer offers to exchange the shares plus disburse cash for any fractional units owned; or (3) the shareholders simply receive cash for their shares in the old company. In some instances, the issuer may give the shareholders two or three choices as to how to dispose of their shares in the old company.

18. As the transfer agent, IST administers that process, including the cash disbursements to the shareholders. In anticipation of those disbursements, IST's issuers

wire the funds to IST's BMO Account in order to make these disbursements to IST's BMO Account. Some issuers may also include a small additional amount for IST's fee in the wired funds.

19. The second source of funds in the BMO Account, according to Pearson, is from dividend reinvestment checks. Certain issuers allow their shareholders who are enrolled in dividend reinvestment plans to make additional purchases of securities up to a specific dollar amount. In those cases, the shareholders who want to purchase more securities are instructed to send IST a check by a particular date during the month. IST deposits those checks into the BMO Account and arranges for the purchase of additional shares on the open market through a broker-dealer. After the shares are purchased, IST sends statements to the shareholders reflecting the new balance of shares they own.

20. In an agreement between the shareholder and the issuer, the shareholder appoints IST as agent to administer the dividend reinvestment plan.

21. The BMO Account also held Chubb surety bond payments made by securityholders to insure against lost security certificates. These bond payments were less than $3,000 as of March 31, 2014.

**Pearson's Misappropriation of Shareholder Funds**

Pearson's Admissions During the March 2014 Interview

22. During the October 2013 examination, CHRO examiners asked Pearson to produce bank records relating to the BMO Account. CHRO examiners received those documents from Defendants in February 2014.

23. During their review of the BMO Account records, CHRO examiners discovered several unusual transactions in the account which appeared to be related to

payroll. CHRO examinations conducted a subsequent interview of Pearson on March 4, 2014. During that interview, they asked Pearson why it appeared that payroll payments were being made out of the BMO Account. Pearson initially said that the local suburban bank where IST's general operating account was located could not handle making direct deposits for payroll through ACH and so he needed to use the BMO Account at BMO bank.

24. However, when CHRO examiners asked Pearson whether IST generated enough revenue in the BMO Account to cover those payroll expenses, he responded by saying "probably not." Nevertheless, Pearson acknowledged he was using the funds in the BMO Account to make IST's payroll payments. At this time, Pearson also divulged that IST had not filed corporate income tax returns since 2003.

25. Soon after making those admissions, Pearson said that he wanted to retain an attorney and the interview ended.

Pearson's Admissions During the April 2014 Interview

26. The CHRO examiners subsequently scheduled another interview with Pearson on April 25, 2014. This time he was represented by an attorney. During that interview, Pearson confessed that he first used client funds from the BMO Account to cover payroll taxes for employees who used direct deposit in February 2012.

27. Pearson also admitted that in March 2012, he began using funds from the BMO Account to meet all of IST's payroll and payroll tax obligations for employees who used direct deposit.

28. Pearson explained, through counsel, that the he used funds from the BMO Account to meet payroll and payroll tax expenses because IST simply had not earned

7

enough income to cover its business expenses. Pearson claimed that: (1) IST lost several clients, including several banks due to takeovers by the Federal Deposit Insurance Company; (2) incurred unanticipated rental and construction expenses as a result of the firm's office relocation in July 2012; and (3) failed to reduce IST's general expenses.

29. Pearson also claimed that he originally intended to repay the funds he took from the BMO Account, but he lacked the funds to make a full repayment in a timely manner.

30. Pearson further revealed that the BMO Account has never been reconciled since the account was opened in approximately 2006.

31. During the April interview, Pearson produced two schedules to the CHRO examiners which he created to explain his misappropriation of client funds. He said the schedules purport to show the total amount of money he took, the amount of money he allegedly paid back, and the amount he believed he still owed to clients as of March 31, 2014.

32. Pearson's documents show that he misappropriated approximately $1.3 million from the BMO Account. The schedules reflect that the only funds held in the BMO Account were from issuers for the share exchanges, from shareholders with dividend reinvestment plans administered by IST, and a small amount from surety bondholders.

33. The schedules also purportedly show the amount of money Pearson claims to have paid back. The schedules show that the repayments only began after CHRO examiners notified Defendants in September 2013 of their upcoming examination.

According to one of his schedules, Pearson has repaid approximately $207,000. The other schedule claimed to show that he paid back approximately $489,000.

34. During the April 2014 interview, CHRO examiners asked Pearson to provide supporting documentation showing the sources of the repayments. Pearson subsequently provided documents which purportedly show the source for approximately $207,000 in repayments.

35. Pearson also claimed IST had an historical balance of approximately $330,000 in the BMO Account. One of Pearson schedules claims that these funds should be credited against the amount of money Pearson still owes the BMO Account. However, when asked by CHRO examiners if he had documents supporting the source of the $330,000, Pearson acknowledged that it is not clear that these funds actually belong to IST.

36. Pearson told CHRO examiners that he intends to fully repay the BMO Account. Pearson, however, admitted that he would likely need to seek the help of family and friends because he does not have enough personal assets to repay the entire amount he took from the account in the short term. For 2013, Pearson earned over $200,000. Smaller amounts were paid to Pearson's family members, including his wife and children.

37. The ending balance in IST's BMO Account as of April 30, 2014, was $31.5 million. During the 2013 examination, IST's vault contained approximately 115,000 blank dividend checks from approximately 19 issuers and a range of 500 to 1000 blank stock certificates from each of the 130 issuers.

**Additional Violations of the Transfer Agent Provisions**

38. At the conclusion of the 2013 examination of IST, the CHRO examiners found the following deficiencies at IST: (1) failure to safeguard funds and securities; (2) failure to maintain adequate control over the inventory of blank stock certificates and dividend checks; (3) failure to comply with the firm's obligation to report lost or stolen securities; (4) failure to file an annual study and evaluation of internal accounting controls describing any material inadequacies; (5) failure to provide written notice of IST's assumption or termination of transfer agent services to the appropriate qualified registered securities depository; and (6) failure to timely report lost or stolen securities.

39. Each of the deficiencies identified in Paragraph 36 represents an independent violation of the securities laws applicable to transfer agents.

**COUNT I**
**Fraud**
**Section 10(b) of the Exchange Act and Rules 10b-5(a) and 10b-5(c) Thereunder [15 U.S.C. § 78j(b) and 17 C.F.R. §§ 240.10b-5(a) and 240.10b-5(c)]**
**(Against Pearson and IST)**

40. Plaintiff Commission hereby realleges and incorporates by reference Paragraphs 1 through 39 as if fully set forth herein.

41. By their conduct as alleged above, Pearson and IST, in connection with the purchase and sale of securities, by use of the means and instrumentalities of interstate commerce and by use of the mails, and in violation of has employed devices, schemes and artifices to defraud and engaged in acts, practices and courses of business which operate as a fraud and deceit upon purchasers, prospective purchasers, sellers and other persons.

42. Pearson and IST acted with scienter.

43. By reason of the foregoing, Pearson and IST violated, and unless enjoined, will continue to violate the provisions of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and 10b-5(c) thereunder [17 C.F.R. §§ 240.10b-5(a) and 240.10b-5(c)].

## COUNT II
### Violation of Commission Rules Applicable to Transfer Agents
### Section 17A(d)(1) of the Exchange Act [15 U.S.C. § 78q-1(d)(1)]
### (Against IST)

44. Plaintiff Commission hereby realleges and incorporates by reference Paragraphs 1 through 67 as if fully set forth herein.

45. Section 17A(d)(1) of the Exchange Act [15 U.S.C. § 78q-1(d)(1)] prohibits transfer agents from, directly or indirectly, engaging in any activity as a transfer agent in contravention of the rules promulgated by the Commission.

46. By reason of the actions and omissions alleged in this Complaint, IST has violated, and unless restrained and enjoined, will continue to violate Section 17A(d)(1) of the Exchange Act [15 U.S.C. § 78q-1(d)(1)].

## COUNT III
### Failure to Safeguard Funds and Securities
### Rule 17Ad-12 of the Exchange Act [17 C.F.R. § 240.17Ad-12]
### (Against IST)

47. Plaintiff Commission hereby realleges and incorporates by reference Paragraphs 1 through 46 as if fully set forth herein.

48. Rule 17Ad-12 of the Exchange Act [17 C.F.R. § 240.17Ad-12] requires registered transfer agents to maintain reasonable safeguards for funds and securities for each issue of securities for which they perform stock transfer functions.

49. IST failed to maintain such reasonable safeguards, as Pearson was able to misappropriate at least $1.3 million in funds from the BMO Account to pay payroll and other business expenses. In addition, as evidenced during both the 2011 and 2013 SEC examinations, IST failed to maintain an accurate inventory of unissued stock certificates and dividend checks secured inside IST's vault.

50. By reason of the foregoing, IST violated, and unless restrained and enjoined, will continue to violate, Rule 17Ad-12 of the Exchange Act [17 C.F.R. § 240.17Ad-12].

## COUNT IV
### Failure to File Annual Study and Evaluation of Internal Accounting Control
### Rule 17Ad-13 of the Exchange Act [17 C.F.R. § 240.17Ad-13]
### (Against IST)

51. Plaintiff Commission hereby realleges and incorporates by reference Paragraphs 1 through 46 as if fully set forth herein.

52. Rule 17Ad-13 of the Exchange Act [17 C.F.R. § 240.17Ad-13] requires all transfer agents to file annually with the Commission an independent accountant's report concerning the transfer agent's system of internal accounting control and related procedures for the transfer of record ownership and the safeguarding of related securities and funds.

53. IST filed an independent accountant's report with the Commission on August 29, 2013, which claimed that securities and funds with IST are safeguarded against loss from unauthorized use or disposition. However, Pearson's misappropriation of funds makes that report materially inaccurate. Pearson knew he had stolen client funds

and that the accountant's report was not true. Yet, Pearson, as the president and owner of IST, allowed that inaccurate report to be filed with the Commission.

54. By reason of the foregoing, IST violated, and unless restrained and enjoined, will continue to violate, Rule 17Ad-13 of the Exchange Act [17 C.F.R. § 240.17Ad-13].

## COUNT V
### Failure to Give Notice of Assumption and Termination of Transfer Agent Services
### Rule 17Ad-16 of the Exchange Act [17 C.F.R. § 240.17Ad-16]
### (Against IST)

55. Plaintiff Commission hereby realleges and incorporates by reference Paragraphs 1 through 46 as if fully set forth herein.

56. Rule 17Ad-16 of the Exchange Act [17 C.F.R. § 240.17Ad-16] requires every registered transfer agent to send written notice of assumption or termination of transfer agent services to the appropriate qualified registered securities depository. Such notice must be sent on or before the later of ten calendar days prior to the effective date of such assumption or termination or the day the transfer agent is notified of the effective date of such assumption or termination.

57. IST failed to give such timely notice to the appropriate qualified registered securities depository as required by this rule. A review of new and terminated transfer agent business during the period from October 1, 2012 to September 30, 2013 revealed that IST failed to notify the appropriate qualified registered securities depository of eight terminations as transfer agent. Additionally, IST filed the required notice late with respect to two appointments and one termination as transfer agent. IST had previously been found in violation of Rule 17Ad-16 of the Exchange Act [17 C.F.R. § 240.17Ad-16] during the 2008 SEC examination.

58. By reason of the foregoing, IST violated, and unless restrained and enjoined, will continue to violate, Rule 17Ad-16 of the Exchange Act [17 C.F.R. § 240.17Ad-16].

**COUNT VI**
**Failure to Report Lost and Stolen Securities**
**Rule 17f-1 of the Exchange Act [17 C.F.R. § 240.17f-1]**

59. Plaintiff Commission hereby realleges and incorporates by reference Paragraphs 1 through 46 as if fully set forth herein.

60. Rule 17f-1 of the Exchange Act [17 C.F.R. § 240.17f-1] requires that a registered transfer report to the Commission or its designee, the discovery of the loss of any securities certificate where criminal actions are not suspected and when the securities certificate has been missing or lost for a period of two business days. Such report shall be made within one business day of the end of such period. Additionally, every registered transfer agent that originally reported a lost, missing or stolen securities certificate shall report recovery of that securities certificate to the Commission or to its designee within one business day of such recovery or finding.

61. The Commission's 2013 examination revealed that IST failed to timely file reports with the Commission's designee in at least 12 instances, during the 2013 SEC examination. The number of days IST was late in filing the reports ranged from three days to 188 days. IST had previously been found in violation of this rule at the conclusion of the SEC's 2008 and 2011 examinations.

62. By reason of the foregoing, IST violated, and unless restrained and enjoined, will continue to violate, Rule 17f-1 of the Exchange Act [17 C.F.R. § 240.17f-1].

<u>**COUNT VII**</u>
**Aiding and Abetting Liability**
**Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)]**
**(Against Pearson)**

63.  Plaintiff Commission hereby realleges and incorporates by reference Paragraphs 1 through 62 as if fully set forth herein.

64.  As described above, IST violated Section 17A(d)(1) of the Exchange Act [15 U.S.C. § 78q-1(d)(1)] and Rules 17Ad-12, 17Ad-13, 17Ad-16, and 17f-1 [17 C.F.R. §§ 240.17Ad-12, 240.17Ad-13, 240.17A-16 and 240.17f-1] thereunder as described in Counts II through VI, which are incorporated by reference as if set forth fully herein.

65.  Pearson knowingly or recklessly provided substantial assistance to IST in connection with its violations of the above-stated provisions.

66.  By reason of the foregoing, and pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], Pearson aided and abetted IST's violations of the above-stated provisions.

67.  Pursuant to Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)], Pearson is deemed to be in violation of the above-stated provisions to the same extent as IST.

The Commission demands trial by jury.

**<u>RELIEF REQUESTED</u>**

**WHEREFORE**, the Commission respectfully requests that the Court:

**I.**

**<u>Declaratory Relief</u>**

Declare, determine and find that Pearson and IST committed the violations of the federal securities laws alleged herein.

## II.

## Temporary Restraining Order, Preliminary and Permanent Injunctive Relief

Issue a temporary restraining order, preliminary injunction and permanent injunction enjoining Pearson, IST, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from violating Sections 10(b) and 17A(d)(1) of the Exchange Act [15 U.S.C. § 78j(b) and 78q-1(d)(1)] and Rules 10b-5 thereunder [17 C.F.R. §§ 240.10b-5]; 17Ad-12 [17 C.F.R. § 240.17Ad-12]; 17Ad-13 [17 C.F.R. § 240.17Ad-13]; 17Ad-16 [17 C.F.R. § 240.17Ad-16]; 17Ad-17 [17 C.F.R. § 17Ad-17]; and 17f-1 [17 C.F.R. 240.17f-1].

## III.

## Asset Freeze and Accounting

Issue an Order freezing the assets of Pearson and IST until further Order of the Court, and requiring an accounting.

## IV.

## Disgorgement

Issue an Order requiring Pearson and IST to jointly and severally disgorge all ill-gotten profits or proceeds that they received as a result of the acts and/or courses of conduct complained of herein, with prejudgment interest.

## V.

## Penalties

Issue an Order directing Pearson and IST to pay civil penalties pursuant to Section 21(d) of the Exchange Act, 15 U.S.C. § 78(d)(3).

## VII.

### Records Preservation and Expedited Discovery

Issue an Order requiring Pearson and IST to preserve any records related to the subject matter of this lawsuit that are in their custody, possession or subject to their control, and to respond to discovery on an expedited basis.

## VIII.

### Further Relief

Grant such other and further relief as may be necessary and appropriate.

## IX.

### Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that may hereby be entered, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Dated: May 22, 2014                    Respectfully submitted,

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION

By: _____

Daniel J. Hayes (hayesdj@sec.gov)
Steven Klawans (klawanss@sec.gov)
Tracy Lo (lot@sec.gov)
Attorneys for Plaintiff
**U.S. SECURITIES AND
 EXCHANGE COMMISSION**
175 West Jackson Blvd., Suite 900
Chicago, IL 60604
Telephone: (312) 353-7390